UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YASIN MAHDI,<br><br>     Plaintiff,<br><br>   v.<br><br>MIDLAND CREDIT MANAGEMENT,<br>INC.,<br><br>     Defendant. | No. 25-CV-6211 (RA)<br><br>MEMORANDUM<br>OPINION & ORDER |

RONNIE ABRAMS, United States District Judge:

Plaintiff Yasin Mahdi filed this action against Defendant Midland Credit Management, Inc. ("MCM") alleging that MCM's debt collection practices violated the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA"). Pending before the Court are MCM's motion to dismiss for lack of personal jurisdiction, Mahdi's request for jurisdictional discovery and Mahdi's cross-motion to transfer venue. For the following reasons, MCM's motion to dismiss is granted, Mahdi's request for jurisdictional discovery is denied, and his cross-motion to transfer venue is granted.

**BACKGROUND**

Unless otherwise noted, the Court draws the following facts from the Amended Complaint. Dkt. No. 1-2 (the "Amended Complaint" or "Am. Compl."). Mahdi is a resident of Racine, Wisconsin. *Id.* ¶ 3. MCM is a corporation incorporated in Kansas with its principal place of business in California. *Id.* ¶ 6. It has also been registered as a foreign business corporation in New York since 2003. *Id.* ¶ 8. According to the Amended Complaint, MCM conducts business in New York and has filed numerous consumer credit lawsuits in New York courts. *Id.* ¶ 9.

This action arises from a debt Mahdi allegedly owed to MCM, originating from his Citibank Simplicity credit card. *Id.* ¶ 4. On September 19, 2023, Citibank, N.A. notified Mahdi that his Citi credit card debt had been sold to MCM, a debt collection company. *Id.* ¶¶ 4, 7, 17. Mahdi mailed dispute letters from Wisconsin to MCM's Michigan address, requesting that MCM validate the alleged debt pursuant to the FDCPA. *Id.* ¶¶ 18, 20. On June 12, 2024, MCM mailed a letter from California to Mahdi in Wisconsin. *Id.* ¶ 21. According to Mahdi, the letter falsely stated that he had invoked a cease communication request under the FDCPA, which would generally prohibit a debt collector from further communicating with a consumer with respect to a debt that the consumer refuses to pay. *Id.* A few months later, MCM filed a collection lawsuit against Mahdi in a small claims court in Racine County, Wisconsin, attempting to collect the disputed debt. *Id.* ¶ 23. MCM also reported Mahdi's debt to credit reporting agencies without marking it as disputed, despite Mahdi having disputed it in January and February 2024. *Id.* ¶ 24. Because of MCM's reporting, Mahdi's credit scores were lowered, and as a result, two New York financial institutions denied his credit card applications around August 2024. *Id.* ¶ 26.

Mahdi initially filed suit in the Supreme Court of the State of New York on April 25, 2025. Dkt. No. 1-1 ("Summons and Complaint in the State Court Action"). On July 9, 2025, MCM moved to dismiss the complaint for lack of personal jurisdiction. Dkt. No. 1-3 ("Docket List in the State Court Action"). Two days later, Mahdi filed the Amended Complaint in state court, raising essentially the same claims with more detailed factual allegations. On July 29, 2025, MCM removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441, 1446. Dkt. No. 1 ("Notice of Removal"). MCM now moves to dismiss the Amended Complaint for lack of personal jurisdiction, Dkt. No. 5-1 ("Mot. to Dismiss"). Mahdi seeks jurisdictional discovery, Dkt. No. 7 ("Opp'n") at 9, and cross-moves to transfer venue to the Eastern District of Wisconsin, Dkt. No.

12 ("Mot. to Transfer"). For the reasons stated below, MCM's motion to dismiss for lack of personal jurisdiction is granted, Mahdi's request for jurisdictional discovery is denied, his cross-motion to transfer venue is granted, and the case is transferred to the United States District Court for the Eastern District of Wisconsin.

<strong>LEGAL STANDARD</strong>

## I. Rule 12(b)(2)

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013).[1] While a court "read[s] the pleadings and any supporting materials in the light most favorable to the plaintiff[]," it "also require[s] that the plaintiff[] make legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 121 (2d Cir. 2021).

"Determining personal jurisdiction over a foreign defendant in a federal-question case such as this requires a two-step inquiry." *Licci*, 732 F.3d at 168. The Court first "look[s] to the law of the forum state to determine whether personal jurisdiction will lie." *Id.* If it finds that there is jurisdiction under the law of the forum state, the Court then "consider[s] whether [its] exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." *Id.*

## II. Jurisdictional Discovery

"District courts enjoy broad discretion in determining whether to order jurisdictional discovery." *NovelAire Techs., L.L.C. v. Munters AB*, 2013 WL 6182938, at *13 (S.D.N.Y. Nov.

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

3

21, 2013).  Courts in this Circuit "routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a prima facie case of jurisdiction."  *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185–86 (2d Cir. 1998)) (collecting cases).

### III.  Transfer of Venue

"[L]ack of personal jurisdiction could be cured by transfer to a district in which personal jurisdiction could be exercised, with the transfer authority derived from either section 1406(a) or section 1404(a)."  *SongByrd, Inc. v. Est. of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000).[2]  "The relevant inquiry under either Section 1404(a) or Section 1406(a) is whether the 'interests of justice' militate in favor of transfer or dismissal."  *Donner v. DER SPIEGEL Gmbh & Co. KG*, 747 F. Supp. 3d 681, 695 (S.D.N.Y. 2024), *aff'd*, 2025 WL 2985764 (2d Cir. Oct. 23, 2025).  "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court."  *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993).

### DISCUSSION

### I.    Personal Jurisdiction

Generally, there are two types of personal jurisdiction — "general or all-purpose jurisdiction, and specific or conduct-linked jurisdiction."  *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). MCM first argues that the Court does not have general jurisdiction over it.  Mot. to Dismiss at 4–

---

[2] Mahdi also moves to transfer venue pursuant to 28 U.S.C. § 1631.  *See* Mot. to Transfer at 4, 7–11.  The Second Circuit has noted, however, that "the legislative history of section 1631 provides some reason to believe that this section authorizes transfers only to cure lack of subject matter jurisdiction," not personal jurisdiction.  *SongByrd, Inc.*, 206 F.3d at 179 n.9.  Because "only one inquiry is necessary under all three [statutes]: whether the interests of justice militate in favor of transfer or dismissal," there is no need for the Court to separately consider transfer pursuant to § 1631.  *See In re Ski Train Fire in Kaprun, Austria, on Nov. 11, 2004*, 224 F.R.D. 543, 547 (S.D.N.Y. 2004).

8. The Court agrees.

## A. General Jurisdiction

"Under New York law, a foreign corporation is subject to general personal jurisdiction in New York if it is 'doing business' in the state." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000); *see* N.Y. C.P.L.R. § 301. The Supreme Court in *Daimler AG v. Bauman*, however, rejected the theory that general jurisdiction attaches in every state where a corporation "engages in a substantial, continuous, and systematic course of business." 571 U.S. at 138. Rather, it identified as "paradigm bases for general jurisdiction" a corporation's principal place of business and place of incorporation. *Id.* at 137. The Second Circuit has read *Daimler* to establish that, "except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016). An "exceptional case" only exists where the foreign defendant's contacts with a forum "are so substantial as to render it 'at home' in that state." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 223 (2d Cir. 2014).

Mahdi acknowledges that New York is neither MCM's state of incorporation nor its principal place of business. *See* Dkt. No. 7 ("Opp'n") at 5. He contends, however, that exceptional circumstances exist because MCM's contacts with New York are so substantial as to render it "at home" in New York. *Id.* at 6–7. He offers two arguments to support this position. First, he asserts that MCM has been registered to do business in New York since 2003. He concedes, however, that it is settled law that "a foreign corporation's registration to do business and designation of an agent for service of process in New York does not constitute consent to general jurisdiction." *Aybar v. Aybar*, 177 N.E.3d 1257, 1261 (N.Y. 2021); *see also Rucker v. IQ Data Int'l, Inc.*, 2022 WL 17542030, at *3 (S.D.N.Y. Dec. 5, 2022) ("[M]ere registration to do business under New

5

York's business statutes is insufficient to establish general jurisdiction in New York.").

Mahdi next asserts that MCM actively engages in debt collection practices in New York and has filed hundreds of lawsuits as a plaintiff in New York courts, and that these "systematic activit[ies]" render MCM "at home" in New York. Opp'n at 7. But Mahdi fails to cite any authority that supports this position. To the contrary, in *Bonkowski v. HP Hood LLC*, a case on which Mahdi relies, the court refused to exercise general jurisdiction over a defendant who "has utilized New York State and [f]ederal [c]ourts for actions on numerous occasions."[3] 2016 WL 4536868, at *3–4. Indeed, the relevant New York statutory provision explicitly states that "a foreign corporation shall not be considered to be doing business in this state . . . by reason of carrying on in this state any one or more of the following activities: (1) maintaining or defending any action or proceeding, whether judicial, administrative, arbitrative or otherwise." N.Y. Bus. Corp. L. § 1301(b)(1); *see also Buliga v. Rudolph & Hellman Auto*., 2024 WL 1718689, at *3 (S.D.N.Y. Apr. 22, 2024) ("[W]hen a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how systematic and continuous, are extraordinarily unlikely to add up to an exceptional case."). Mahdi thus fails to demonstrate that this Court has general personal jurisdiction over MCM.

### B. Specific Jurisdiction

MCM argues next that there is no basis for the Court to exercise specific jurisdiction over it under N.Y.C.P.L.R. § 302. The Court again agrees. Neither Section 302(a)(1) nor Section

---

[3] In addition to *Bonkowski*, Mahdi cites *Midland Credit Mgmt., Inc. v. Sharpe*, 207 N.Y.S.3d 438 (N.Y. Sup. Ct. 2024) for this proposition, which does not address jurisdiction at all. This is not the only time Plaintiff's counsel miscites a case. Indeed, as discussed at the March 4, 2026 conference, Plaintiff's counsel makes numerous misrepresentations about case holdings in his papers. Counsel is once again reminded of his obligations under Federal Rule of Civil Procedure 11(b). He shall diligently research and review all the cases he cites in his papers before filing and refrain from engaging in similar conduct before this or any other court.

302(a)(3) supports specific jurisdiction.

**1.  Section 302(a)(1)**

Section 302(a)(1) allows for the exercise of personal jurisdiction over a non-domiciliary if "[the defendant] transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1).  Personal jurisdiction "over a non-domiciliary is limited, however, to causes of action 'arising from'" the acts.  *Trombetta v. Novocin*, 2021 WL 6052198, at *3 (S.D.N.Y. Dec. 21, 2021).

To satisfy the "arising from" prong, there must be "a sufficient nexus between the activity and the cause of action."  *Copterline Oy v. Sikorsky Aircraft Corp.*, 649 F. Supp. 2d 5, 12 (E.D.N.Y. 2007) (citing *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983)).  A connection that is "merely coincidental" is insufficient to support jurisdiction.  *Johnson v. Ward*, 829 N.E.2d 1201, 1203 (N.Y. 2005).  Mahdi alleges that "MCM transacts business within New York through its registration, service via its New York agent, and numerous consumer credit lawsuits," but acknowledges that his claims against MCM "arise[] *indirectly* from these activities."  Am. Comp. ¶ 13 (emphasis added).  Indeed, as is clear from the Amended Complaint, all MCM's alleged actions happened outside of New York: Mahdi claims to have mailed all his dispute letters regarding his alleged debt from his home in Wisconsin to MCM's Michigan address, *id.* ¶¶ 18–21; MCM mailed him a letter from California, *id.* ¶ 21; and MCM filed a collection lawsuit against him in Wisconsin.  *Id.* ¶ 23.  In fact, the only connection between MCM's alleged actions and New York is that MCM's debt collection practices allegedly impacted Mahdi's creditworthiness with New York financial institutions.  *Id.* ¶ 13.  Specifically, Mahdi contends that his claims arise from MCM's inaccurate reporting to credit rating agencies which was accessed by New York lenders

who denied his consumer credit applications. Opp'n at 7–8.

This attenuated connection between Mahdi's FDCPA and FCRA claims and MCM's activity is insufficient to support specific jurisdiction in New York. In *Alvarez v. Experian Information. Solutions., Inc.*, for instance, the court addressed a similar scenario and held that even if Experian, a credit rating agency, "transacted business in New York by selling creditors consumer reports," the plaintiff's FCRA claim does not arise from Experian's sale of the reports in New York, but from its "failure to correct the erroneous reporting," which happened outside of New York. 758 F. Supp. 3d 60, 87 (E.D.N.Y. 2024). Similarly, here, Mahdi's FDCPA and FCRA claims arise from MCM's alleged failure to cease collection of the disputed debt and to then report the debt as disputed to Experian and TransUnion. Am. Compl. ¶¶ 33–39. None of these actions happened in New York. The mere fact that MCM's report to credit rating agencies was accessed by New York entities is therefore insufficient to support specific jurisdiction. *See Mednik v. Specialized Loan Servicing, LLC*, 2021 WL 707285, at *5–6 (E.D.N.Y. Feb. 23, 2021) (finding no personal jurisdiction where defendant allegedly furnished inaccurate credit information but its failure to correct erroneous reporting happened outside of New York).

### 2. Section 302(a)(3)

Section 302(a)(3) provides that a court may exercise specific jurisdiction over a non-domiciliary defendant if that defendant "commits a tortious act without the state causing injury to person or property within the state," so long as the defendant either (i) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or (ii) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3). Jurisdiction pursuant to Section 302(a)(3)

is predicated on five elements: "(1) [t]he defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; [and] (5) the defendant derives substantial revenue from interstate or international commerce." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006).

Although Mahdi satisfies the first two elements, he fails to make a prima facie showing of the third element—that the act caused injury to a person or property within the state. He argues that MCM's out-of-state reporting to the credit rating agencies caused him injury in New York given that New York lenders denied him credit. Opp'n at 8. But this allegation is insufficient when determining whether a defendant's act caused injury within the state, because courts "apply a situs-of-injury test," *Jerusalem NY Enters. LLC v. Huber Erectors & Hoisting, LLC*, 2021 WL 5827934, at *5 (E.D.N.Y. Dec. 8, 2021), which looks to "the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001).

Mahdi concedes that he does not reside in New York and that MCM's reporting of his alleged debt to the credit rating agencies occurred outside of New York. Opp'n at 8. Courts have consistently refused to exercise personal jurisdiction where "the events giving rise to the alleged injury" occurred out-of-state, "even if Plaintiffs suffered financial harm in New York." *NewMarkets Partners LLC v. Oppenheim*, 638 F. Supp. 2d 394, 403 (S.D.N.Y. 2009); *see also Henkin v. Gibraltar Priv. Bank & Tr. Co.*, 2018 WL 557866, at *4 (E.D.N.Y. Jan. 22, 2018). Mahdi cites only one case in support of jurisdiction under Section 302(a)(3)—*Buliga v. Rudolph & Hellman Automotive.*, 2024 WL 1718689 (S.D.N.Y. Apr. 22, 2024)—but the court in *Buliga*

9

held that "there is no personal jurisdiction under C.P.L.R. § 302(a)(3)" because "the original event that caused the injury took place in the United Kingdom, not in New York." *Id.* at *4.

Accordingly, Mahdi has failed to establish a prima facie showing of personal jurisdiction under either Section 302(a)(1) or Section 302(a)(3).

## II.    Jurisdictional Discovery

In the alternative, Mahdi seeks to conduct jurisdictional discovery. Opp'n at 9. The Court denies that request.

A court may deny jurisdictional discovery where a plaintiff "do[es] not establish a prima facie case that the district court has jurisdiction over the defendant." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 18–19 (2d Cir. 2015). "A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Id.* at 19. The Court need "not draw argumentative inferences in favor of a plaintiff who has failed to allege even bare facts" establishing that jurisdiction is proper. *Smit v. Isiklar Holding A.S.*, 354 F. Supp. 2d 260, 263–64 (S.D.N.Y. 2005).

Applying that standard in the context of the jurisdictional discovery sought in this case, Mahdi fails to make fact-specific allegations or provide evidence to support a finding of personal jurisdiction. He also fails to make any showing that the discovery he seeks is "likely to uncover additional facts" that could support a finding that MCM is "at home" in New York, that his claims "arise from" MCM's New York business, or that MCM's act "caused injury" to him "within the state" of New York. *Cf. Smit*, 354 F. Supp. at 263–64 (noting, in the context of jurisdictional discovery, that "[t]he pleadings must indicate . . . that limited discovery is likely to uncover additional facts supporting jurisdiction"). Mahdi's request for jurisdictional discovery is therefore

denied.

## III. Transfer Venue

Having concluded that it lacks personal jurisdiction over MCM, the Court turns to Mahdi's motion to transfer the case to the Eastern District of Wisconsin. *See* Mot. to Transfer. "[A] court may transfer an action commenced in a district in which personal jurisdiction over the defendant is lacking to another district in which the action could have been brought, if the transfer would promote the interest of justice." *Op. Corp. v. Roca Labs, Inc.*, 2015 WL 405532, at *5 (S.D.N.Y. Jan. 30, 2015).

Mahdi asserts that the case could have been brought in the Eastern District of Wisconsin. Mot. to Transfer at 4–7, 10, 12–13. The Court agrees. MCM engaged in debt collection activities against Mahdi in Racine, Wisconsin by mailing him a letter to his residence and initiating a debt collection action in a Wisconsin state court located there. Am. Compl. ¶¶ 21, 23. Wisconsin's long-arm statute is "as broad as the constitutional due process standard," *Khor Chin Lim v. N.Y..S. Bd. of L. Examiners*, 2012 WL 2884845, at *2 n.2 (E.D. Wis. July 13, 2012) (*citing Rasmussen v. Gen. Motors Corp.*, 803 N.W.2d 623, 630 (Wis. 2011)), and must "be construed liberally in favor of finding jurisdiction." *Wausau Container Corp. v. Westview Packaging, LLC*, 2010 WL 4531407, at *2 (E.D. Wis. Nov. 2, 2010). Because MCM's "debt collection activities were purposefully directed at [a] Wisconsin resident[]," the Eastern District of Wisconsin "may exercise personal jurisdiction" over it. *Bednar v. Co-Op Credit Union of Montevideo*, 2015 WL 1962116, at *1 (W.D. Wis. Apr. 30, 2015). Venue is proper because "the allegedly unlawful communications were received here," *id.* at *4, and because MCM initiated a debt collection action in this district. *See* 28 U.S.C. § 1391(b)(2) (venue is proper where "a substantial part of the events

11

or omissions giving rise to the claim occurred.").

The Court next considers "whether the 'interests of justice' militate in favor of transfer or dismissal." *Donner*, 747 F. Supp. 3d at 695. "[I]n most cases . . . , the courts conclude that it is in the interest of justice to transfer to a proper forum rather than to dismiss the litigation." *Abalu v. Soc'y of Hum. Res. Mgmt.*, 2025 WL 1019199, at *15 (S.D.N.Y. Apr. 4, 2025), *see also Alexander v. Comm'r of Soc. Sec.*, 2023 WL 6125634, at * 3 (S.D.N.Y. Sept. 19, 2023) ("Because the purpose of 28 U.S.C. § 1406(a)'s transfer provision is to remove whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits, it is often more efficient to transfer the case than to dismiss it.").

"A 'compelling reason' for transfer is generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 436 (2d Cir. 2005). Although Mahdi represents that "[n]o statute of limitations bar exists," Mot. to Transfer at 10, he appears to be mistaken. The FDCPA's statute of limitation is "one year from the date on which the violation occurs," 15 U.S.C. § 1692k(d), which happens "when an individual is injured by the alleged unlawful conduct." *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 83 (2d Cir. 2019). In this case, all MCM's allegedly unlawful debt collection conduct occurred in 2014. *See* Am. Compl. ¶¶ 21, 23. Moreover, Mahdi alleges that two New York financial institutions denied his credit card applications around August 2024. *Id.* ¶ 24. Therefore, all the alleged injuries suffered by him happened in 2024. His FDCPA claim would thus be time-barred if he refiles this case in the Eastern District of Wisconsin.

Courts in this Circuit generally find that "when the statute of limitations has run, [it] is in the interest of justice [to transfer venue]." *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir.1993); *see K.A. Holdings Ltd. of NY v. Chagaris*, 2009 WL 10685159, at *10 (S.D.N.Y. Nov.

13, 2009) (finding transfer more appropriate than dismissal when statute of limitations may have run on some of plaintiff's claims). In addition, transferring venue in this action "prevent[s] the waste of time, energy, and money" and protects the parties "against unnecessary inconvenience and expense." *Morris v. Ernst & Young, LLP*, 2012 WL 3964744, at \*2 (S.D.N.Y. Sept. 11, 2012). Accordingly, the Court finds that transferring venue is in the interest of justice and grants Mahdi's motion to transfer this action to the Eastern District of Wisconsin.

### CONCLUSION

For the reasons stated above, Defendant's motion to dismiss for lack of personal jurisdiction is granted, Plaintiff's request for jurisdictional discovery is denied, and Plaintiff's cross-motion to transfer venue is granted. The Clerk of Court is respectfully directed to terminate the motions pending at Dkt. Nos. 5 and 11 and transfer this case to the United States District Court for the Eastern District of Wisconsin.

SO ORDERED.

Dated:      March 30, 2026
           New York, New York

_____
Ronnie Abrams
United States District Judge

13